Our next case is Australian Therapeutic v. Naked TM, LLC. Case number 19-1567. Mr. Minker, you have reserved four minutes of your time for rebuttal, correct? Yes, sir. Okay, we're ready when you are. Okay. May it please the court, my name is James Minker. I'm here on behalf of Australian Therapeutic, the appellant in this case, and the petitioner at the Tremont Trial and Appeal Board. We're here because the board made the not infrequent mistake of mistaking a grounds or merits determination with a standing determination. On page 8 of the blue brief, in your statement of facts, you say the parties were unable to agree orally or otherwise to the terms of the settlement. On page 20 of the blue brief, you say you vigorously disagreed with the board's conclusion that the ongoing settlement negotiations amounted to an enforceable binding contract. Correct? You don't otherwise develop the argument in your brief. Your Honor, it's immaterial whether there was an agreement because… So why shouldn't we conclude that that portion of your argument is waived? We don't believe that it has any relevance to the proceedings. So it is waived? We contest that it's the interpretation of that contract, but for purposes of this appeal and the issue of standing, it really has no relevance to whether my client is standing. When you make a point in your brief and you don't have an argument to support it, you shouldn't have made the point. Okay. Okay. A party does not need to have… The board starts by explaining that to have a claim under Section 2D is likely to confusion. You have to have a proprietary right or a property right in the mark, and it cites the Otto Roth case for that proposition. It then goes on to explain that because of an agreement between the parties, that my party does not have a property right and therefore cannot have standing.  In the Books on Tape case, the court… And I'll read it quickly. The board is holding that under Otto Roth v. Universal Foods, petitioner has no standing to bring a cancellation proceeding under Section 2D because it does not establish proprietary rights on Books on Tape. It is wrong as a matter of law. Petitioner is a competitive respondent. The respondent clearly has an interest in the outcome beyond the general public. The same issue was addressed in the Jewelers case. The court there said that you cannot conflate a standing argument with the merits, that it doesn't matter whether the party alleging likely to confusion has any property rights. In Books on Tape, the mark was generic. In Jewelers' case, they had not used the mark. They had no intention of using the mark. They were simply a trade association, and this court said it doesn't matter what the grounds are. Standing is an entirely separate issue. In the Cuba tobacco case, Empresa Cubano del Tobacco, the appellant in that case and the petitioner in that case was forbidden by Congress from selling their products. They were ordered by the Second Circuit that they had no right to enjoin the register in that case from using their mark. But they still could have standing because they had filed an application, and the application had been refused. And the fact that they had filed that application and been refused was on its own without anything more standing. The party has a real interest. The definition of real interest is whether the party is an intermeddler. In this case, the party is my client is clearly not an intermeddler. They have an interest. Does your client sell condoms in the United States under the nude trademark? Yes. How much product do they sell? I'm not aware of the volume of the nude trademark. The naked trademark, they've sold an order of 40 to 50 a year. That's not my question. Yeah, I'm not aware of his volume of sales in nude. Is there any record evidence that the naked trademark sells under nude? It's a sub-brand under Four Seasons. Both of them are. They're separate sub-brands. So as this court ruled in Jewelers, standing exists irrespective of the grounds. So whether or not my client has a claim under Section 2D, if it has standing, it still can bring its claims under lack of bona fide intent and also false association, which also are irrelevant. So the question does not start and end whether a party has a proprietary right for jurisdiction under 15 U.S.C. 1064. It's not an Article 3 case. This court's made clear that standing is much more liberally construed before board proceedings than it is in Article 3. On pages 16 to 17 of the Blue Brief, you cite a Third Circuit case, Official Commission of Unsecured Creditors v. Lafferty, for the proposition that an analysis standing doesn't include an analysis of equitable defenses. That's an Article 3 standing. That was the case cited by the board in their decision for justifying having, conflating the arguments that they could analyze the affirmative defense essentially as part of the standing analysis. But if you read the case closely, they clearly talk about standing in the first section and make it very clear that they're not going to mix that. Only after they find that there was standing do they get to the issue of issue preclusion that was relevant in that case. So as an affirmative defense, it certainly can be argued that there is a stopple, but only after they found standing. They didn't analyze those two issues together, and that's exactly what the board did here. They said they weren't going to do that, but then they continued to, they proceeded to do exactly that. So we have a situation where the board said that they found an agreement that my client would not use the mark, but he nevertheless did use the mark, and he used the mark for several years continuously, and they found that that had been proven in the record that my client had continued to use it since 2003. And in six weeks before we filed the original petition to cancel, we received a cease and desist letter from the registrar in this case, not saying that we were in breach of contract from continuing to sell condoms in the United States, but that we were infringing the mark. So my client, wanting to prevent the incontestability of the registration, wanting to remove the registration from the registrar, had certainly a real interest in the outcome of a cancellation of that registration. Even if my client had not been using, which he has, and he never stopped using it, he had been advertising in the United States. The defendant was aware of that advertisement, and so he could have rights beyond property rights, like the first Niagara case where they had use similar to trademark rights in order to establish his priority. So he could have a real interest in the outcome, even if you accept that he had agreed that he would not use the mark in the United States. One further point I wanted to make, and that is that standing does not require that – excuse me a second. It seems to me that the law is very clear as to the legal interest or legal right and that going to the merits of the case and not standing. Would you agree with that? I would agree exactly that the issue of whether there is a contractual estoppel would be an affirmative defense that would go to the merits. So obviously in order of progress, we present our evidence, they present their affirmative defense, and then the board decides. Now the board in this case has already decided that the affirmative defenses are inapplicable, that my client has already proved that there's a likelihood of confusion. That confusion is inevitable, and as a result that they have no affirmative defenses that they can raise, and they've already struck them. They've kept these alive for the purposes of the issue of standing, but they're still affirmative defenses, and that would be something that they would have to prove in order to rebut the case of a likelihood of confusion. They did not appeal the findings of the board in summary judgment that there was a likelihood of confusion and that confusion was inevitable, and that those estoppel, lashes, and acquiescence and waiver had all been waived or are inapplicable because of the doctrine of inevitable confusion. And that ties back to my original point why the agreement makes no difference because they cannot go back and relitigate this. If this case is remanded on the grounds that there is standing, they cannot go back and argue that there is a contract, and therefore our claims are barred by the affirmative defense. That's an equitable claim that the board has already said is inapplicable. But for the purposes of standing, it doesn't make sense to argue for that evaluation to be made in the context of determining whether a party has a real interest in the outcome of a petition to cancel or notice of opposition. Thank you. Now, sir, Milly, is that correct? Milly? Yes. Good morning. I would like to make a few corrections as to some of the representations that were made by Mr. Menker. Respectfully, the board specifically did not reach the affirmative defenses in this case. The board did cite the law regarding equitable defenses not being applicable in this case because of the inevitable confusion that it found. What the board then said is that... Has your client ever sold condoms in the United States under the nude trademark? Under nude, we do not believe so, no. Our client refrained from using nude because of an agreement between the parties. That's not a sort of I don't believe so kind of answer, yes or no. It is a no. Our client has exclusively used naked for its branding. Equitable defenses do not include contractual defenses, contractual estoppel, waiver based on contract, abandonment based on contract. Regardless, what the board did was look at the facts of this case and the testimony of their chief witness, who was Graham Porter, the chief executive of Australian Therapeutic, and determined that there was a course of conduct here that led to effectively abandonment. That he, from an objective standard, somebody sitting outside of Mr. Porter's head, would believe that they had wound up operations in the United States. That he stated that we have no more naked condoms in the U.S., you're good to go. Clear sailing was what he said. The other elements, so where they actually opposed the application at one point, there were sales at one point, and these other findings that were made. And as of April 4th, 2007, there's a fixed point in time of April 4th, 2007, when by Graham Porter's admission, there were no more sales in the United States, and that our client was freed and had his consent, his blessing, to register this trademark. If we look at a case that I found very instructive that we've used... That consent is in the contract? That consent is in the contract, yes. And the validity of that contract is being debated? Aside from the estoppel issues, but the validity of the contract itself is debatable? The validity of the contract, whether it's debatable or not, wasn't necessary to reach the conclusion that the board did. However, the board is... But if the contract is debatable, then doesn't that give rise to standing? If the contract is debatable, it could give rise to standing. However, the board here, by substantial evidence, determined there was no real legitimate interest in the marks. Australian Therapeutics had no more legitimate interest in this mark in the United States. It continued to operate solely out of Australia. The sales and what they considered to be advertising in the U.S. was on a .au website in Australia, marketed to and targeted at Australian customers. It seems to me that the board may have been a little too fixated on deciding this case on whether there's any type of error on the merits. But that's not what we look at when we're looking at a standing issue, is it? No, you can't conflate standing and the merits, but the evidence involved is substantially the same, such that they're inextricably intertwined. That is, that's Otto Roth. That's actually also Jewelers. If we look at FAMI versus Jay-Z, which is a Ninth Circuit case, admittedly a court case and not a board case, and even though standing is more liberal in an administrative hearing, it's instructive to note that the court analyzed the existence of the contract and the terms of that contract in analyzing standing. Standing must be a real interest, and there must be a reasonable belief that one would be damaged by a registration. There's not that reasonable belief based on Mr. Porter's own statements. Everything that he said was subjective. There was an agreement, but I decided I'd put it aside after I received a demand letter. Why doesn't that agreement show a real interest under Lipton? The agreement between the parties? Yes. No, it doesn't show that he had any more real interest. What kind of impact does the existence of the agreement have on the real interest test? We have the existence of an agreement and the conduct of the parties. The conduct of the parties in taking the affirmative steps to perform on the agreement included winding up operations of Australian therapeutics in the United States, ceasing to sell condoms in the United States, and informing our client that he could go ahead with registering this trademark in the United States because they had no further use. If they had no further use as of April 4th, 2017, no further use in the United States, then any sales after that are, in fact, infringement. Just because Mr. Porter would now like to say, never mind the man behind the curtain, doesn't mean you shouldn't look at Mr. Porter. It seems to me you're addressing the merits or damages type issue. Well, for standing under these, for the real interest test, we don't look at the merits of the case or damages, but whether there's a real interest. And if there's an agreement and that agreement is debatable, then why does that not create real interest that renders standing, Article III standing? It is a, they're bound up together in this particular case. And what the board did and what the board did correctly following Impreza, in Impreza Cigar, a legitimate commercial interest is a real interest. That's at 753-1270, or F3-1270 at 1275. And we see it all over in GAL versus Israel Military Industries, Ministry of Defense, which admittedly is, I mean, it's more an example here. That was the Uzi case. Mr. GAL had transferred the Uzi name and therefore had no more right and therefore lacked standing. Standing must be pleaded, but it must also be affirmatively proved. So if we're looking at the grounds for standing that are sufficient to sustain an opposition or a cancellation, then those are not, they still must prove those grounds. What they alleged was that they had continuous use of the mark and proprietary rights that, and that was a basis for their standing. As such, they failed to prove that they had continuous use and proprietary rights. What they pled and what they proved were different. Just because there's no, just because there's a low threshold for standing doesn't mean there's no threshold for standing. In this case, what was pleaded and what was proved are what are essential here. They pled a commercial interest, an ongoing commercial interest in the mark in the United States. By Mr. Porter's own testimony, there was no further use in the United States. They ceased operations. They wound up their business. They were done. And based on that, the board found no further legitimate interest. So based on substantial evidence, the board found that what was pleaded as to standing was not enough. That what was pleaded was not proven. We looked at the pleadings. We looked at the proof. For this case, they pleaded likelihood of confusion based on priority and based on a real legitimate commercial interest in ongoing sales in the United States, and they failed to prove that. Do you have any further questions? No, thank you. Thank you. You have a little over five minutes of time. Should we require that much? Your client testified that the two companies had a gentleman's agreement. How is that different than a regular agreement? In terms of substance, it could, in my mind— Offer acceptance. Yeah, I mean— Mutuality. Right. I mean, you still—there's no parameters to that gentleman's agreement, just more of a— He had an offer, acceptance, mutuality, and mutual benefits, right? I would say that, without getting too far afield on this, that he said that he had no more condoms in the United States under that brand. He never said he wasn't going to sell them. He never said he wasn't going to file an application. He never said he was going to not oppose their use. All he said was—and then he was silent when they said, hey, you can't use it anymore, and he just ignored them. So whether that amounts to agreement, I can't really say. The board obviously thought it did, and— And you can't say it didn't. I can't say it—but the burden of proof should be on the party alleging an equitable defense to prove that it was a contract and that they relied on that, not the plaintiff to prove that they have standing by virtue of the fact that there was a contract. Your client said that when he received a demand letter, he thought that it was flippant, if I recall, and consequently that voided the gentleman's agreement. Is that right? It was a very short demand letter just saying, hey, we have all these registrations. Any use is infringing, and we'll see damages. And it wasn't his testimony in effect that that voided the gentleman's agreement? That's what he felt, yes. Where is that found in the law? In his defense, he's Australian, so maybe in Australia they have a different view of the law, of common law of trade contracts. I'm not sure. But I do want to make one point follow up on the point that was made by the other side, and that is that we do look to the pleadings. We do look to the proof. In the pleadings, we allege we had the application. We proved that it was filed. They admitted that it was filed. We showed that it was refused. They never objected on the ground that it wasn't really refused. On that basis alone, the Cuba tobacco case clearly says that nothing more is needed. Ritchie v. Simpson and Lipton and one of the other cases clearly say nothing more, or I think it's Jewellers, said nothing more is needed beyond filing an application that's refused. Then you have a real interest. The goal of standing in these cases is to separate the general public, somebody who has no interest different from the rest of the world versus somebody that does. And here you have a competitor. You have actual use of the mark. You have an application that's been refused. You have a cease and desist letter telling them that it can't use this anymore. And there's valuable rights that come with the registration and with an incontestable registration that my client was going to be damaged by if he allowed them to stand. And for those reasons, and there is standing in this case, and I'm not sure if others have any further questions. How do you view the Sullivan-Sons case impacting your position? I believe the Sullivan-Sons was not a standing case. It was a merits case. In that case, they had a written settlement agreement. It was clear and unambiguous. And then the board granted summary judgment on the grounds that the party did not have – on the grounds that the defendants showed that there was equitable stop. It wasn't a standing. It wasn't denied. And that also predates the court's decisions in Jewelers and subsequent decisions. Okay. Thank you. Thank you. Thank all the parties for their arguments this morning. This court now remains in recess. All rise.